WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 1167280
Jonathan D. Fink, Esq., SBN 110615
Magdalena D. Kozinska, Esq., SBN 258403
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 608-9142

Attorneys for Defendant, RESIDENTIAL CREDIT SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTBOURNE CAPITAL, LLC, | ) Case No.: cv11-9193-GHK (RZx) |
| Plaintiff, | ) *Assigned to the Hon. George H. King* |
| vs. | ) **NOTICE OF MOTION AND** |
| | ) **MOTION TO DISMISS** |
| RESIDENTIAL CREDIT | ) **PLAINTIFF'S COMPLAINT FOR** |
| SOLUTIONS, INC., | ) **FAILURE TO STATE A CLAIM** |
| | ) **FOR RELIEF OR, IN THE** |
| Defendants. | ) **ALTERNATIVE, MOTION TO** |
| | ) **STRIKE; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES IN** |
| | ) **SUPPORT THEREOF** |
| | ) |
| | ) **[FRCP Rule 12(b)(6), (f)]** |
| | ) |
| | ) Date:    January 9, 2012 |
| | ) Time:   9:30 a.m. |
| | ) Ctrm:   650 |
| | ) |
| | ) Complaint Filed: November 4, 2011 |

///

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that on January 9, 2012 at 9:30 a.m., in Courtroom 650 of the above-entitled court located at 255 East Temple Street, Los Angeles, California 90012, Defendant, Residential Credit Solutions, Inc. ("RCS") will move this Court for an Order dismissing the Complaint of Plaintiff Westbourne Capital, LLC ("Plaintiff") pursuant to FRCP Rule 12(b)(6), for the failure to state a claim upon which relief can be granted.  This motion is made on the grounds that Plaintiff has failed to plead the essential facts which give rise to his claims and/or claims are barred on their face, as confirmed by matters which may properly be judicially noticed by this Court.

This Motion will be based upon this Notices, the attached memorandum of points and authorities, the attached Request for Judicial Notice, the complete files and records in this action, the oral argument of counsel and upon such other and further evidence as this Court might deem proper.

PLEASE TAKE FURTHER NOTICE that, at the same time, RCS will additionally and/or alternatively move this Court pursuant to FRCP Rule 12(f) for an Order striking the following allegations contained in the Complaint:

1. The Demand for Jury Trial [caption page and page 17 of the Complaint], in its entirety;
2. Paragraph 44 of the Complaint, in its entirety;
3. Paragraph 51of the Complaint, in its entirety;
4. Paragraph 59 of the Complaint, in its entirety;
5. Paragraph 69 of the Prayer to the Complaint, in its entirety;
6. Paragraph 4 of the Prayer to the Complaint, in its entirety;
7. Paragraph 6 of the Prayer to the Complaint, in its entirety;
8. Paragraph 8 of the Prayer to the Complaint, in its entirety;
9. Paragraph 10 of the Prayer to the Complaint, in its entirety; and

10.   Paragraph 14 of the Prayer to the Complaint, in its entirety.

RCS moves to strike these allegations on the grounds that:

1.   Plaintiff's allegations are not sufficient to demonstrate that RCS have engaged in any conduct, malice, oppression or fraud, warranting an award of punitive damages;

2.   Plaintiff is not entitled to recover punitive damages under the Breach of Covenant theory as pled;

3.   Plaintiff is not entitled to recover attorneys' fees under any of the theories pled; and

4.   Plaintiff has expressly waived any right to jury trial.

On November 28, 2011, RCS's counsel sent a letter to Plaintiff's counsel by e-mail and U.S. mail, requesting that the parties meet and confer regarding this motion pursuant to Local Rule 7-3.  That meeting occurred the morning of December 2, 2011 but did not resolve any of the issues in the Motion.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated:  December 2, 2011        By:   /s/ Jonathan D. Fink
Jonathan D. Fink, Esq.
Attorneys for Defendant, RESIDENTIAL
CREDIT SOLUTIONS, INC.

# TABLE OF CONTENTS

Page No.

MEMORANDUM OF POINTS AND AUTHORITIES

I.    STATEMENT OF FACTS ........................................................ 1

II.   THE COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM UPON WHICH RELIEF
      MAY BE GRANTED .............................................................. 1

A.    The Standards To Be Applied To A Motion To Dismiss ........................... 1

B.    Analysis of Claims ................................................................. 3

      1.  The Contract at Issue Requires That This Case Be
          Governed by the Laws of New York State ............................. 3

      2.  RCS Is Not In Breach of the Servicing Agreement ............... 4

      3.  Conversion Is An Improper Claim for Relief Here .............. 7

      4.  There Is No Tort Recovery for Breach of the Implied
          Covenant ........................................................................... 8

      5.  The Two Interference Claims Are Inadequately Pled ........ 11

      6.  BPC § 17200 Is Inapplicable to This Action .................... 12

III.  IMMATERIAL, IMPERTINENT OR SCANDALOUS
      ALLEGATIONS MAY BE STRICKEN ................................ 14

IV.   CONCLUSION ........................................................................ 17

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*148 High View Fund, L.P. v. Hall,*
    (S.D.N.Y. 1998) 27 F.Supp.2d 420, 429 ................................................. 8

*Aerolineas Galapagos, S.A. v Sundowner Alexandria, LLC,*
    (2010) 74 A.D.3d 652 ..................................................................... 11

*Aero Properties, Inc. v. Gottlieb,*
    (1962) 206 Cal.App.2d 711, 716 ...................................................... 8

*Aramony v. United Way of America,*
    949 F.Supp. 1080, 1086 (S.D.N.Y.1996) ......................................... 7

*Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.,*
    (E.D.N.Y. 2000) 125 F.Supp.2d 641, 654 ...................................... 8

*Ashcroft v. Iqbal,*
    565 U.S. __, 129 S.Ct. 1937, 1949, 1950, 1953 (2009) ........................ 2, 3

*Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,*
    (9th Cir. 1960) 283 F.2d 551, 557 ............................................... 13

*Balistreri v. Pacifica Police Department,*
    901 F.2d 696, 699 (9th Cir. 1990) ................................................. 2

*Bank of the West v. Superior Court,*
    (1992) 2 Cal.4th 1254, 1267 ......................................................... 13

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955, 1965 (2007)......................................................... 2

*Bell Atlantic v. Twombly,*
    550 U.S. 544, 555 (2007).............................................................. 2

*Bionghi v. Metro. Water Dist. of So. California,*
    (1999) 70 Cal.App.4th 1358 .......................................................... 8

*Brousseau v. Jarrett,*
 (1977) 73 Cal.App.3d 864, 872 ............................................................ 15

*Bureerong v. Uvawas,* (C.D. Cal.
 (1996) 922 F. Supp. 1450, 1479 n.34 .................................................... 15

*California State Board Of Funeral Directors And Embalmers* v. *Mortuary*
 *in Westminster Memorial Park,*
 (1969) 271 Cal. App. 2d 638, 642 ........................................................ 13

*Cardonet, Inc. v. IBM Corp.*
 2007 WL 518909 at *4-5 (N.D. Cal. Feb. 14, 2007)............................... 12

*Careau & Co. v. Security Pacific Business Credit, Inc.*
 (1990) 222 Cal.App.3d 1371, 1398-1401 .......................................... 8, 10

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.,*
 (2d Cir.2008) 547 F.3d 115, 132 ........................................................ 11

*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.,*
 70 N.Y.2d 382, 389.............................................................................. 8

*Clegg v. Cult Awareness Network,*
 18 F.3d. 752, 754-55 (9th Cir. 1994)..................................................... 3

*Cohen v. Groman Mortuary, Inc.*
 (1964) 231 Cal.App.2d 1, 8 ................................................................ 15

*Conley v. Gibson,*
 355 U.S. 41, 45-46 (1957) ...................................................................... 1

*Consumer Advocates v. Echostar Satellite Corp.,*
 (2003) 113 Cal. App. 4th 1351, 1360 .................................................. 13

*Dyckoff v. Prime Designs Licensing, Ltd.,*
 1984 WL 567 (S.D.N.Y. July 10, 1984)................................................. 7

*Elxsi v. Kukje America Corp.* 672 F.Supp.
 1294, 1299 (N.D.CA 1987) (and cases cited therein) ............................ 9

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Emery v. Visa Internat. Service Ass'n,*
  95 Cal. App. 4th 952, 960 (2002) ............................................................ 12

*ESI, Inc. v. Coastal Power Prod. Co.,*
  995 F.Supp. 419 (S.D.N.Y.1998) ............................................................ 7

*Express, LLC v. Fetish Group, Inc.,*
  (C.D. Cal. 2006) 464 F. Supp. 2d 965, 980 ........................................... 13

*Fantasy, Inc. v. Fogerty,*
  (9th Cir. 1993) 984 F.2d 1524, 1528 ...................................................... 14

*Fasolino Foods Co. v. Banca Nazionale del Lavoro,*
  (2d Cir.1992) 961 F.2d 1052, 1056 .......................................................... 9

*Fogerty v. Fantasy, Inc.,*
  (1994) 510 U.S. 517 .................................................................................. 14

*Foley v. Interactive Data Corp.*
  (1988) 47 Cal.3d 654, 682-700 ........................................................... 9, 10

*Freeman & Mills, Inc. v. Belcher Oil Co.*
  11 Cal.4th 85, 102-03(1995) .................................................................. 10

*Freeman v. Time, Inc.,*
  (9th Cir. 1995) 68 F.3d 285, 289 ........................................................... 13

*G.D. Searle & Company v. Superior Court,*
  (1975) 49 Cal.App.3d 22, 29 ............................................................ 15, 16

*Hall v. EarthLink Network, Inc.*
  (2nd Cir. 2005) 396 F.3d 500, 508 ........................................................... 8

*Hannex Corp. v. GMI, Inc.,*
  (2d Cir.1998)140 F.3d 194, 206 ............................................................. 11

*Harris v. Provident Life & Accident Ins. Co.,*
  (2d Cir.2002) 310 F.3d 73, 81 ................................................................. 9

iv

*Independence Discount Corp. v. Bressner,*
    47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (N.Y.App.Div.1975) ...................... 7

*Ivey v. Board of Regents,*
    673 F.2d 266, 268 (9th Cir. 1982) ................................................ 2

*Khoury v. Maly's of California, Inc.,*
    (1993) 14 Cal. App. 4th 612, 619 ................................................ 12

*Kirch v. Liberty Media Corp.,*
    (2d Cir. 2006) 449 F.3d 388, 401 ................................................ 11

*Laurent v. Williamsburgh Sav. Bank,*
    28 Misc.2d 140, 137 N.Y.S.2d 750, 754-55 (N.Y.Sup.1954) .................. 7

*Linear Tech. Corp. v. Applied Materials, Inc.,*
    (2007) 52 Cal.App.4th 115, 135 ................................................ 13

*Lippitt v. Raymond James Fin. Servs.,*
    (9th Cir. 2003) 340 F.3d 1033, 1043 ........................................... 12

*Mangini v. Aerojet-General Corp.,*
    230 Cal. App. 3d 1125, 1155-56 (1991) ....................................... 12

*McCarthy v. Mayo,*
    827 F.2d 1310, 1316 (9th Cir. 1987) ........................................... 2

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,*
    (2d Cir.2007) 500 F.3d 171, 188 ................................................ 15

*Mitsui Manufacturers Bank v. Superior Court*
    212 Cal.App.3d 726, 730-33 (1989) ......................................... 9, 10

*Moore v. Regents of University of California,*
    (1991) 51 Cal.3d 120, 134-35 ................................................ 8

*Morgan Guar. Trust Co. of New York v. Crane,*
    (S.D.N.Y.1999) 36 F.Supp.2d 602, 603–04 ................................ 15

v

*Okura & Co. (America), Inc. v. Careau Group,*
  (C.D. Cal. 1991) 783 F.Supp. 482, 488-89 ............................................... 15

*Olsen v. Breeze, Inc.*
  (1996) 48 Cal. App. 4th 608, 617-618 ...................................................... 13

*OP Solutions, Inc. v Crowell & Moring, LLP*
  (2010) 72 A.D.3d 622 .......................................................................... 8, 11

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
  (1990) 50 Cal.3d 1118, 1126 ................................................................. 11

*People v. Casa Blanca Conv. Homes, Inc.,*
  (1984) 159 Cal. App. 3d 509, 530 ..................................................... 13, 14

*People v. McKale,*
  25 Cal.3d 626, 632 (1979) ..................................................................... 13

*Perfect 10, Inc. v. VISA Int'l Service Ass'n,*
  494 F.3d 788, 808-809 (9th Cir. 2007) .................................................... 12

*Peters Griffin Woodward, Inc. v. WCSC, Inc.,*
  88 A.D.2d 883, 452 N.Y.S.2d 599, 600 N.Y.App.Div.1982) ................... 7

*PPX Enters. v. Audiofidelity Enters.,*
  (2d Cir.1987) 818 F.2d 266, 269 ...................................................... 11, 12

*Premium Mortg. Corp. v. Equifax, Inc.,*
  (2d Cir. 2009) 583 F.3d 103, 107 ........................................................... 12

*Price v. Wells Fargo Bank*
  213 Cal.App.3d 465, 476-79 (1989) .......................................................... 9

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530, 533-534 (9th Cir. 1984) ...................................................... 2

*Rosales v. Citibank,*
  (N.D. Cal. 2001) 133 F.Supp.2d 1177, 1180 .......................................... 15

vi

*Saunders v. Supr. Court,*
    27 Cal.App.4th 832, 838-39 (1994)............................................. 13

*Shah v. County of Los Angeles,*
    797 F.2d 743, 745 (9th Cir. 1986) .............................................. 2

*Shamblin v. Berge,*
    (1985) 166 Cal. App. 3d 118, 123 ............................................. 12

*Sharma v. Skaarup Ship Mgmt. Corp.,*
    (2d Cir. 1990)916 F.2d 820, 828 ............................................. 11

*Silberg v. California Life Insurance Company,*
    (1974) 11 Cal.App.3d 452, 462 ............................................... 15

*Simmons v. Peavy-Welsh Lumber Co.*
    113 F.2d 812, 813 (5th Cir. 1940) ............................................ 2

*State of California v. State Lands Comm.,*
    (N.D. Cal. 1981) 512 F.Supp. 36, 38......................................... 14

*Stewart v. Life Ins. Co. of North America,*
    (E.D. Cal. 2005) 388 F. Supp. 2d 1138, 1143 ......................... 12

*Stickrath v. Globalstar, Inc.,*
    (N.D. Cal. 2007) 527 F.Supp.2d 992, 989................................. 13

*Student Loan Mktg. Ass'n,*
    181 F.R.D 629, 639 (S.D. Cal. 1998) ....................................... 2

*Traffix, Inc. v. Herold,*
    (S.D.N.Y. 2003) 269 F.Supp.2d 223, 228 ............................... 7

*Vu v. California Commerce Club, Inc.,*
    (1997) 58 Cal.App.4th 229, 235 ............................................... 8

*Wailua Assoc. v. Aetna Casualty & Surety Co.,*
    (D. Hawaii 1998) 183 F.R.D. 550, 553 and 556 ....................... 14

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Wallis v. Superior Court*
  160 Cal.App.3d 1109, 1118 (1984) ............................................................. 9

*Western Mining Council v. Watt,*
  643 F.2d 618, 624 (9th Cir. 1981) ............................................................. 2

*Wilkerson v. Butler,*
  (E.D. Cal. 2005) 229 FRD 166, 172 ......................................................... 15


## STATUTES

*Business & Professions Code* § 17200 et seq. ....................................... 12
*Civil Code* § 1021 ..................................................................................... 16
*Civil Code* § 1717 ..................................................................................... 16
*Civil Code* § 3294 ..................................................................................... 15


## RULES

*FRCP*, Rule 8 .............................................................................................. 8
*FRCP*, Rule 8(a)(2) ................................................................................... 1
*FRCP*, Rule 12(b)(6) ................................................................................. 1
*FRCP*, Rule 12(f) ..................................................................................... 14


## OTHER AUTHORITIES

2 Moore's Federal Practice
  § 12.37[3] (3d ed. 2004) ........................................................................ 15

5C Wright & Miller, Federal Practice and Procedure:
  Civil 3d § 1382 ..................................................................................... 14

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## MEMORANDUM OF POINTS & AUTHORITIES

**I.     STATEMENT OF FACTS**

This action arises out of the failure of a business relationship between Plaintiff Westbourne Capital, LLC ("Plaintiff") and Defendant Residential Credit Solutions, Inc. ("RCS"). RCS is in the business of servicing real estate secured loans for financial institutions and other entities while Plaintiff is an investment management company primarily dealing with real estate secured loans [Complaint ¶¶ 7 and 8]. On January 13, 2011, Plaintiff and RCS entered into a written Servicing Agreement whereby RCS would provide specified loan servicing duties for certain loans managed by Plaintiff, for which Plaintiff was to compensate RCS [Complaint ¶¶ 2 and 9 and Exhibit "1" thereto].

Unfortunately, disputes arose between Plaintiff and RCS over their respective performance under the terms of the Servicing Agreement, leading to RCS giving notice that it was terminating the Servicing Agreement. Plaintiff's response was to file this lawsuit and assert fictitious and improper tort claims in a bad faith effort to obtain an undue advantage over RCS in what, at best, should be a simple breach of contract suit.

**II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED:**

**A.     The Standards To Be Applied To A Motion To Dismiss.**

It is well-established that a complaint may be dismissed pursuant to *FRCP* Rule 12(b)(6) if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle him to relief.[1]  Specifically, even though a "short and plain statement" of the claim must be alleged,[2] a complaint may be dismissed as a matter of law under FRCP Rule 12(b)(6) for (a) lack of a

---

[1] *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).
[2] *FRCP* Rule 8(a)(2).

1

cognizable legal theory or (b) insufficient facts under a cognizable legal claim.[3] In terms of the latter, "factual allegations must be enough to raise a right to relief above the speculative level"[4] and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" must be alleged.[5] Courts should dismiss any claim "that fails to plead sufficiently all required elements of a cause of action."[6]

Also, where allegations in pleadings and the exhibits thereto conflict, the exhibits control,[7] while a court may not "supply essential allegations of the claim that were not initially pled."[8] Further, when ruling on a motion to dismiss, all well-pled facts in the complaint are deemed true;[9] however, conclusory allegations are disregarded.[10] The United States Supreme Court has stated that "formulaic recitation of the elements of a cause of action will not suffice."[11] A plaintiff cannot avoid this bar by clothing legal conclusions in the guise of facts to take advantage of the liberality with which courts otherwise view pleadings.[12]

Thus, the liberality with which courts view pleadings cannot salvage a conclusive claim unsubstantiated by transparent fact.[13] In fact, while Courts consider facts in the complaint as true on a motion to dismiss, they do not "assume the truth of legal conclusions merely because they are in the form of factual

---

[3] *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984); see generally *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990).
[4] *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).
[5] *Id.*
[6] *Student Loan Mktg. Ass'n,* 181 F.R.D 629, 639 (S.D. Cal. 1998).
[7] *Simmons v. Peavy-Welsh Lumber Co.* 113 F.2d 812, 813 (5th Cir. 1940).
[8] *Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).
[9] *Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir. 1986).
[10] *McCarthy v. Mayo,* 827 F.2d 1310, 1316 (9th Cir. 1987).
[11] *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal,* 565 U.S. __, 129 S.Ct. 1937, 1953 (2009).
[12] *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).
[13] *Id.*

2

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

allegations."[14]  In *Ashcroft v. Iqbal*, the United States Supreme Court admonished that *FRCP*, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." [15] The Court made clear that "threadbare recitals of a cause of action's elements supported by conclusory statements" are insufficient to overcome a motion to dismiss.[16]  Further, "the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[17]

  Examining the claims for relief of the Complaint, it is apparent that each and every cause of action alleged falls far short of the pleading requirements to survive this Motion to Dismiss and/or is otherwise barred as a matter of undisputed fact and applicable law.

**B.** **Analysis of Claims:**

 **1.** **The Contract at Issue Requires That This Case Be Governed by the Laws of New York State:**

  Plaintiff has attached as Exhibit "1" to the Complaint the Servicing Agreement which it contends it entered into with RCS and which forms the basis for most, if not all, of the claims at issue in this action [Complaint ¶¶ 2, 9, 30, 36, and 46].  Section 10.08 of the Servicing Agreement provides that the agreement was deemed to have been made in New York State and that it "shall be construed in accordance with the laws of the State of New York <u>and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York.</u>"  [emphasis added].  Thus, while Plaintiff was free to file this action in California, it was required to do so in accordance with New York law, not that of California.

---

[14] *Id.*
[15] *Iqbal, supra,* 129 S. Ct. at 1949.
[16] *Id.* at 1950.
[17] *Clegg v. Cult Awareness Network,* 18 F.3d. 752, 754-55 (9th Cir. 1994).

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    **2. <u>RCS Is Not In Breach of the Servicing Agreement</u>:**

2       The provisions of the Servicing Agreement which Plaintiff identifies as

3 supposedly having been breached here are §§ 2.04, 3.02, 3.03, 3.11, 4.01, 8.01,

4 8.02 and 8.03 [Complaint ¶ 30].  Examining these provisions, in light of the

5 allegations of the Complaint, reveals the lack of merit to this claim.

6       Section 2.04 was supposedly breached by RCS placing "LOL" ("life-of-

7 loan") tax service contracts on certain mortgage loans [Complaint ¶ 19].  Section

8 2.04 provides that Plaintiff had five (5) days from receipt of an electronic listing

9 of loan status in which to either agree with the loan listing or provide a rejection

10 notice; if Plaintiff either agreed with the listing or did not provide the timely

11 rejection notice, RCS was to purchase a LOL contract for any loan on the list

12 which was not already covered.  Plaintiff concedes in ¶ 19 that RCS has taken the

13 position that it purchased the LOL contracts *before* Plaintiff provided any

14 rejection notice; nonetheless, Plaintiff concludes—without providing <u>any</u> factual

15 allegations in support (such as comparative dates)—that it provided a timely

16 rejection.  There is no claim that the LOL contracts were purchased post-rejection.

17       As for § 3.02, which governs the collection and liquidation of mortgage

18 loans, the Complaint neglects to specify how the obligations thereunder have been

19 breached by RCS.  There is no allegation as to any funds uncollected or any

20 foreclosures not conducted which were required to be collected or conducted.  To

21 the contrary, the Complaint concedes that RCS has continued with these duties

22 pending transfer of servicing to a new entity [Complaint ¶ 22].

23       The claim as to § 3.03 fares no better.  The obligation there is for RCS to

24 establish and make deposits into a custodial account.  The Complaint is silent as to

25 what conduct, if any, Plaintiff contends violated this provision.

26       The requirements under § 3.11 are that RCS make sure that hazard

27 insurance is maintained on the properties securing the loans "in an amount which

28 is *at least* equal to" the lesser of the replacement value of the improvements on the

1  property and the greater of either the outstanding principle balance of the loan or

2  the amount needed to prevent the Mortgagor from becoming a co-insurer.

3  Plaintiff is apparently not complaining that there were any un- or under-insured

4  properties but rather that it believed that certain properties were *over-insured*

5  [Complaint ¶ 18].  However, § 3.11 does not set a ceiling on the amount of

6  coverage that must be provided, but rather a floor and does not provide for any

7  right on the part of Plaintiff to demand a reduction in coverage.  Instead, in the

8  first instance, coverage is up to the Mortgagor and, if the Mortgagor does not

9  provide a proper policy, RCS is given the right to obtain the coverage.

10          Section 4.01 offers Plaintiff its best argument for actionable breach, with

11  Plaintiff contending that RCS has not remitted the required payments to it

12  provided for by that Section [Complaint ¶ 22].  A closer review of that Section,

13  and the allegation, tells a different story, though.  Plaintiff alleges that the breach

14  here occurred when RCS sent a letter dated October 14, 2011 to Plaintiff stating

15  that RCS intended to withhold all current and future remittances in the Custodial

16  Account until Plaintiff selected and completed the transfer of the loans to a new

17  servicer [Complaint ¶ 22].  Plaintiff then filed this action on November 4, 2011.

18          According to § 4.01, remittances were to be paid to Plaintiff on the

19  "Remittance Date," which is defined by Article I of the Servicing Agreement to be

20  the fifth business day after the end of each calendar month.  As the letter was sent

21  October 14, 2011, and the fifth business day after the end of October was

22  Monday, October 7th, Plaintiff filed suit <u>before there could have been any actual</u>

23  <u>breach</u>.  To the extent that Plaintiff might argue anticipatory breach, it is worth

24  noting that § 4.01 expressly allows RCS to offset from the remittance any charges

25  or withdrawals permitted under § 3.04 <u>and</u> § 8.03 allows RCS to transfer the net

26  amounts held in the Custodial Account to the successor servicer.  It was only the

27  day of the filing of the Complaint, November 4, 2011, that Plaintiff advised RCS

28  it had selected a successor servicer to enable such a transfer to be made.  In

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

fairness, there is an ambiguity as to whether the reference to an October 7, 2011 remittance not being made was intended to refer to an existing breach in non-payment of the remittance for the month of September.  If that was indeed the intent, the problem Plaintiff faces is that, pursuant to §§ 3.04, 3.06, 3.25(ii) and 4.01 of the Servicing Agreement, RCS <u>was expressly allowed to apply those proceeds to reimburse itself</u> for its costs, expenses, fees and advances—the Complaint ignores these rights.

Oddly, though, if the September remittance were already intended to be addressed by ¶ 22, Plaintiff adds a separate allegation [Complaint ¶ 26] that the September, 2011 remittance was not made to it by RCS; however, Plaintiff again overlooks the rights of RCS to withdraw its costs, expenses, fees and advances from those funds pursuant to §§ 3.04, 3.06, 3.25(ii) and 4.01 of the Servicing Agreement.  There is also, of course, the issue of Plaintiff's obligation to pay RCS's fees under § 5.03 of the Servicing Agreement.

Plaintiff's claim of breach of §§ 8.01 – 8.03 is, frankly, peculiar.  Despite the increasingly fractious relationship between Plaintiff and RCS alleged by the Complaint, Plaintiff seeks to take RCS to task for ending the relationship—even though it admits that RCS agreed to keep on servicing the loans until Plaintiff could find a replacement servicer [Complaint ¶ 22].  Nonetheless, examining § 8.01 it is unclear what obligations, if any, Plaintiff imagines it imposed on RCS that have been breached since that Section simply lists the events that would constitute a default under the Servicing Agreement.  Section 8.02 provides potential bases for terminations without cause but does not provide any affirmative obligations on RCS.  Section 8.03 simply provides the process for terminations and the Complaint fails to specify what part of that process has not been complied with here, particularly since Plaintiff has failed and refused to select a successor servicer.

There is simply no actionable breach alleged here.

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**3.  Conversion Is An Improper Claim for Relief Here:**

Under New York law, the conversion claim is clearly improper for several reasons, as reflected by the court's opinion in *Traffix, Inc. v. Herold*, (S.D.N.Y. 2003) 269 F.Supp.2d 223, 228:

> Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 N.Y.App.Div.1982).  New York law recognizes an action for conversion of money, but requires the plaintiff to have "ownership, possession or control of the money" before its conversion. *Aramony v. United Way of America*, 949 F.Supp. 1080, 1086 (S.D.N.Y.1996). Plaintiff's claim fails to state a cognizable claim for conversion.  Plaintiff never had "ownership, possession or control of the money" it alleges has been converted because any ownership interest plaintiff had is by virtue of the contract with FTT and plaintiff is claiming that FTT's breach of that contract deprived it of that interest.  *See ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419 (S.D.N.Y.1998) (Conner J.)   While plaintiff may have had an equitable right to the monies FTT collected on its behalf pursuant to their agreement, a conversion action cannot be predicated on an equitable interest or a mere breach of contractual obligation. *See Dyckoff v. Prime Designs Licensing, Ltd.*, 1984 WL 567 (S.D.N.Y. July 10, 1984) (*citing Laurent v. Williamsburgh Sav. Bank*, 28 Misc.2d 140, 137 N.Y.S.2d 750, 754-55 (N.Y.Sup.1954); *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (N.Y.App.Div.1975)).

*Traffix, Inc.* involved a suit by a company against the entity it hired for billing and collection services on its accounts.  As with Plaintiff's claim here, the plaintiff in *Traffix, Inc.* claimed that the servicer failed to pay to it monies which had been collected on its behalf.  However, as held by the Court there, Plaintiff here cannot recover on a conversion claim for at least the following reasons:  (1) Plaintiff never had actual ownership of the funds in question, merely an equitable right to them as permitted by the agreement; (2) Plaintiff is just attempting to transmute his existing breach of contract claim into a conversion claim.  In addition, though,

7

1    New York law precludes a claim for conversion of money unless it is held in a
2    "specific, identifiable fund and [subject to] an obligation to return or otherwise
3    treat in a particular manner the specific fund in question."[18]  The Complaint makes
4    no such identification.

5          To the extent it matters, California's law on conversion claims is similar.[19]

6    **4.  <u>There Is No Tort Recovery for Breach of the Implied Covenant</u>:**

7          Both California and New York reject the notion that, in the context of the
8    ordinary commercial contract there can be tort recovery for the breach of the
9    implied covenant of good faith and fair dealing.[20]  Indeed, both California and
10   New York law generally decry the "conversion" of run-of-the-mill breach of
11   contract claims into torts.[21]  This is not to say that the existence of a contract claim
12   means there can never also be a viable tort claim in connection therewith, but
13   instead that it is wholly insufficient to do so based  just on the exact same conduct
14   giving rise to the breach--rather more is required.

15   ///
16   ///
17   ///
18
19
20

---

[18]  *148 High View Fund, L.P. v. Hall*, (S.D.N.Y. 1998) 27 F.Supp.2d 420, 429.
[19]  *Moore v. Regents of University of California*, (1991) 51 Cal.3d 120, 134-35 (requiring that
the plaintiff's demurrer be sustained without leave to amend); *Vu v. California Commerce Club,
Inc.*, (1997) 58 Cal.App.4th 229, 235; *Aero Properties, Inc. v. Gottlieb*, (1962) 206 Cal.App.2d
711, 716.
[20]  *Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.*, (E.D.N.Y. 2000) 125 F.Supp.2d
641, 654; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371,
1398-1401.
[21]  *Hall v. EarthLink Network, Inc.* (2nd Cir. 2005) 396 F.3d 500, 508, *citing to Careau & Co. v.
Security Pac. Bus. Credit, Inc.*, (1990) 222 Cal.App.3d 1371 and *Bionghi v. Metro. Water Dist.
of So. California*, (1999) 70 Cal.App.4th 1358. *See also OP Solutions, Inc. v Crowell & Moring,
LLP* (2010) 72 A.D.3d 622:  "It is well settled that 'a simple breach of contract is not to be
considered a tort unless a legal duty independent of the contract itself has been violated' (*Clark–
Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389....)."

8

1   Moreover, to the extent that this claim is just based on the same facts as

2   Plaintiff's claim for breach of contract [Complaint ¶¶ 45 and 48], this claim

3   should be dismissed as redundant.[22]

4   Were California law to apply here, a viable claim for breach of the implied

5   covenant of good faith and fair dealing would require Plaintiff to allege five

6   characteristics, which are not satisfied here: 1) inherently unequal bargaining

7   power; 2) non-profit motive for entering into the contract; 3) inadequacy of

8   ordinary contract damages; 4) special vulnerability on the part of plaintiff due to

9   the harm it would suffer from non-performance by other party; and 5) other party's

10  awareness of this vulnerability.[23]  The Complaint here satisfies none of these

11  requirements.

12  Further, the viability of such claims outside the insurance context is suspect.

13  In *Foley v. Interactive Data Corp.*[24] the California Supreme Court gave a clear

14  indication of its belief that, while an implied covenant of good faith and fair

15  dealing might still subsist in every contract, outside of the insurance context, its

16  breach would only give rise to contract damages.[25]  Although *Foley* itself involved

17  a wrongful termination case, several cases have noted the *Foley* decision ought to

18  apply to virtually any other business relationship other than that of insurer and

19  insured—it has even been applied to the lender-borrower relationship:[26]

20  Although real parties argue the holding in *Foley* did not eliminate tort
21  liability for the breach of the covenant of good faith and fair dealing
22  in the commercial contract context of this case, the plain fact is such

23  [22] *See Harris v. Provident Life & Accident Ins. Co.*, (2d Cir.2002) 310 F.3d 73, 81; *Fasolino*
24  *Foods Co. v. Banca Nazionale del Lavoro*, (2d Cir.1992) 961 F.2d 1052, 1056 (holding that the
    "breach of [the duty of good faith and fair dealing] is merely a breach of the underlying
25  contract.").
    [23] *Wallis v. Superior Court* 160 Cal.App.3d 1109, 1118 (1984); *Elxsi v. Kukje America Corp.*
26  672 F.Supp. 1294, 1299 (N.D.CA 1987) (and cases cited therein).
27  [24] *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 682-700.
    [25] Despite this clear principal, Plaintiffs seek tort damages here [Complaint ¶ 83].
28  [26] *Price v. Wells Fargo Bank* 213 Cal.App.3d 465, 476-79 (1989); *Mitsui Manufacturers Bank*
    *v. Superior Court* 212 Cal.App.3d 726, 730-33 (1989).

9

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  an action never existed.   Even the pre-*Foley* appellate decisions
2  which have applied the doctrine in the employment context did so by
3  finding the characteristics of an employee/ employer relationship
   were roughly equivalent to those found in the fiduciary relationship
4  between an insured and its insurer.[27]

5      Indeed, in *Careau & Co., supra,* the court found that this cause of action
6  probably no longer existed in the context of ordinary commercial transactions:

7      From this history, it seems clear to us that the recognition of a tort
8      remedy for a breach of the implied covenant in a noninsurance
       contract has little authoritative support.  In fact, with but one arguable
9      exception (see fn. 25) and apart from decisions disapproved by *Foley*,
10     every case which has considered the issue has rejected the
       recognition of a special relationship between specific contracting
11     parties.[28]
12

13     Although the court in *Careau & Co.*, out of an abundance of caution,
14  applied the five part test announced in *Wallis, supra*, and the modified version
15  thereof in *Mitsui Manufacturers Bank, supra*, it came to the inevitable conclusion
16  that: "Under no reasonable perspective of the facts in this case would the
17  *Wallis/Mitsui* standards be satisfied....[T]he 'transaction involved here is the
18  quintessentially ordinary arms-length commercial transaction between two parties
19  of equal bargaining strength, breaches of which are adequately remedied by
20  ordinary contract damages.'"
21  As in *Careau*, the allegations of the Complaint here satisfy none of the factors
22  identified by the California courts as prerequisites to a cause of action for breach
23  of the implied covenant of good faith and fair dealing even assuming the viability
24  of this legal theory outside of the insurance context.
25
26
27  [27] *Mitsui Manufacturers Bank, supra,* at 732-33.  *See also Freeman & Mills, Inc. v. Belcher Oil Co.* 11 Cal.4th 85, 102-03(1995) (holding that contractual wrongs should not give rise to tort remedies).
28  [28] *Careau & Co., supra,* at 1399.

10

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   **5.  The Two Interference Claims Are Inadequately Pled:**

2       Here, again, it should be recalled that neither California nor New York look

3   with favor upon attempts to transmute breach of contract claims into torts.[29]

4   Beyond that significant point, though, under New York law, the required elements

5   of a claim for tortious interference with a contract are: "(1) the existence of a valid

6   contract between the plaintiff and a third party; (2) the defendant's knowledge of

7   the contract; (3) the defendant's intentional procurement of the third-party's breach

8   of the contract without justification; (4) actual breach of the contract; and (5)

9   damages resulting therefrom."[30]  In addition, Plaintiff must allege that, but for

10  RCS's actions, there would not have been a breach.[31]  California law is to the same

11  effect.[32]  The Complaint here is grossly inadequate on the second element, as no

12  specific contracts are identified, and fatally flawed on the third, fourth and fifth

13  elements (as well as the "but for" causation) as not even conclusions are provided

14  to support them, let alone actual facts.  No breach of any third party contract is

15  alleged, the best Plaintiff can muster is a vague muttering of unidentified contracts

16  with unidentified clients having somehow been "disrupted" [Complaint ¶ 57].

17      The elements for a claim for interference with economic advantage are

18  essentially: (1) the plaintiff had business relations with a third party; (2) the

19  defendant interfered with those business relations; (3) the defendant acted for a

20  wrongful purpose or used dishonest, unfair, or improper means; and (4) the

21  defendant's acts injured the relationship."[33]  Here, too, the elements of the tort are

22

23

24  [29] *Aerolineas Galapagos, S.A. v Sundowner Alexandria, LLC*, (2010) 74 A.D.3d 652; *Hall,*

25  *supra; OP Solutions, Inc., supra.*
    [30] *Kirch v. Liberty Media Corp.*, (2d Cir. 2006) 449 F.3d 388, 401.

26  [31] *Sharma v. Skaarup Ship Mgmt. Corp.*, (2d Cir. 1990)916 F.2d 820, 828.

27  [32] *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, (1990) 50 Cal.3d 1118, 1126.
    [33] *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, (2d Cir.2008) 547 F.3d 115, 132; *PPX*

28  *Enters. v. Audiofidelity Enters.*, (2d Cir.1987) 818 F.2d 266, 269, abrogated on other grounds by
    *Hannex Corp. v. GMI, Inc.*, (2d Cir.1998)140 F.3d 194, 206.

1  similar in California.[34]  Absent allegations capable of supporting a reasonable

2  inference that RCS acted "with the sole purpose of harming the plaintiff or used

3  dishonest, unfair, or improper means," the claim must be dismissed.[35]  No such

4  allegations appear here.  To the contrary, where it appears, as here, that the

5  defendant was acting to advance its own economic interests, there can be no

6  wrongful interference.[36]

7  ### 6.  **BPC § 17200 Is Inapplicable to This Action:**

8  The choice of law provision in the Servicing Agreement applies to bar the §

9  17200 claim as well.[37]  Nonetheless, were this Court to look at the merits of this

10  claim for relief, it would be found sorely wanting.

11  To bring a claim under the California Unfair Competition Law (*Bus. &*

12  *Prof. Code* § 17200 et seq.) (the "UCL"), a plaintiff must show either an (1)

13  unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive,

14  untrue, or misleading advertising,[38] and the claim must be supported by facts

15  described with reasonable particularity.[39]  Also, a UCL claim can only apply to

16  ongoing conduct, relief is not available to remedy past conduct.[40]  Further, the

17  concept of vicarious liability has no application to actions brought under the UCL;

18  rather, a defendant's liability must be based on its personal participation in the

19  unlawful practices and unbridled control over the practices.[41]

20  ///

21

---

22  [34] *Shamblin v. Berge,* (1985) 166 Cal. App. 3d 118, 123; *Della Penna v. Toyota Motor Sales,*
23  *U.S.A.,* (1999) 11 Cal. 4th 376, 393 (conduct must be wrongful beyond mere fact of
   interference).
24  [35] *Premium Mortg. Corp. v. Equifax, Inc.*, (2d Cir. 2009) 583 F.3d 103, 107.
   [36] *PPX Enters., supra,* at 269.
25  [37] *Cardonet, Inc. v. IBM Corp.* 2007 WL 518909 at *4-5 (N.D. Cal. Feb. 14, 2007).
26  [38] *Stewart v. Life Ins. Co. of North America,* (E.D. Cal. 2005) 388 F. Supp. 2d 1138, 1143
   (citing *Lippitt v. Raymond James Fin. Servs.*, (9th Cir. 2003) 340 F.3d 1033, 1043).
27  [39] *Khoury v. Maly's of California, Inc.,* (1993) 14 Cal. App. 4th 612, 619.
   [40] *Mangini v. Aerojet-General Corp.,* 230 Cal. App. 3d 1125, 1155-56 (1991).
28  [41] *Emery v. Visa Internat. Service Ass'n,* 95 Cal. App. 4th 952, 960 (2002); accord *Perfect 10,*
   *Inc. v. VISA Int'l Service Ass'n,* 494 F.3d 788, 808-809 (9th Cir. 2007).

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

"Unlawful Conduct" is defined as "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made,"[42] while "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[43]  "Fraudulent Conduct," on the other hand, "does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived."[44] Statements are only actionable under the UCL if they are likely to deceive a reasonable consumer.[45]  For this purpose, a "reasonable person" standard is applied,[46] and the representations at issue have to be disseminated to, and be likely to mislead, the general public.[47]

In the present matter, Plaintiff has failed to state a UCL claim against RCS. First, of course, is the fact that Plaintiff is neither a consumer nor a competitor of RCS.[48]  Second, the UCL claim is void of any substantive facts, which demonstrates that this claim has not been pled with the requisite particularity.

_____

[42] *Saunders v. Supr. Court,* 27 Cal.App.4th 832, 838-39 (1994) (citing *Pple v. McKale,* 25 Cal.3d 626, 632 (1979)).
[43] *People v. Casa Blanca Conv. Homes, Inc.,* (1984) 159 Cal. App. 3d 509, 530.
[44] *Olsen v. Breeze, Inc.* (1996) 48 Cal. App. 4th 608, 617-618 (citing *Bank of the West v. Superior Court,* (1992) 2 Cal.4th 1254, 1267).
[45] *Stickrath v. Globalstar, Inc.,* (N.D. Cal. 2007) 527 F.Supp.2d 992, 989; see *Freeman v. Time, Inc.,* (9th Cir. 1995) 68 F.3d 285, 289; *Consumer Advocates v. Echostar Satellite Corp.,* (2003) 113 Cal. App. 4th 1351, 1360.
[46] *Freeman,* 68 F.3d at 289; see *California State Board Of Funeral Directors And Embalmers* v. *Mortuary in Westminster Memorial Park,* (1969) 271 Cal. App. 2d 638, 642 (applying standard of "what a person of ordinary intelligence"); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,* (9th Cir. 1960) 283 F.2d 551, 557 (applying standard of "the eye of the ordinary purchaser" to the interpretation of unfair competition and misleading advertising under California law).
[47] *Express, LLC v. Fetish Group, Inc.,* (C.D. Cal. 2006) 464 F. Supp. 2d 965, 980 ("[Plaintiff] does not point to any evidence suggesting that the representations concerning the copyright were disseminated to the public, let alone likely to deceive the public").
[48] *See Linear Tech. Corp. v. Applied Materials, Inc.,* (2007) 52 Cal.App.4th 115, 135: "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contracts, a corporate plaintiff may not rely on the UCL for the relief it seeks."

13

1   Instead, Plaintiff merely makes the conclusory allegations that "RCS's conduct

2   constitutes an unfair, unlawful and fraudulent business act or practice...."[49]

3        Plaintiff does not identify any statute which has been violated here, does not

4   identify any deceptive conduct by RCS, and also did not make any substantive

5   allegation that RCS engaged in any actual "unfair" practices, even as that term is

6   broadly defined by California law.[50]

7   **III.   IMMATERIAL, IMPERTINENT OR SCANDALOUS**

8        **ALLEGATIONS MAY BE STRICKEN:**

9        Rule 12(f) permits a court to "order stricken from any pleading . . . any . . .

10  immaterial, impertinent, or scandalous matter."

11       "Immaterial" matter is that which has no essential or important

12       relationship to the claim for relief. . .being pleaded. . . .According to

     the case law, 'impertinent' matter consists of statements that do not

13       pertain, and are not necessary, to the issues in question. . . .One test

14       that has been advanced for determining whether an allegation in a

     pleading is immaterial or impertinent within the meaning of Rule

15       12(f) is whether proof concerning it could be received at trial; if it

     could not, then the matter is immaterial and impertinent. . . .[51]

16

17  A motion to strike is properly granted "for the purpose of streamlining the

18  ultimate resolution of the action and focusing the jury's attention on the real issues

19  in the case."[52]   A motion to strike is particularly appropriate where, as here, a

20

21  _____

  [49] See, Complaint, ¶ 72.

22  [50] *People v. Casa Blanca Convalescent Homes, Inc.,* (1984) 159 Cal.App.3d 509, 530 ("an
  'unfair' business practice occurs when it offends an established public policy or when the

23    practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

24    consumers.")
  [51] 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1382; *See, Wailua Assoc. v.*

25  *Aetna Casualty & Surety Co.,* (D. Hawaii 1998) 183 F.R.D. 550, 553 and 556 (striking the
  phrase "siege warfare" as scandalous).

26  [52] *Fantasy, Inc. v. Fogerty,* (9th Cir. 1993) 984 F.2d 1524, 1528, *rev'd on other grounds by*

27  *Fogerty v. Fantasy, Inc.,* (1994) 510 U.S. 517; *See State of California v. State Lands Comm.,*
  (N.D. Cal. 1981) 512 F.Supp. 36, 38  ("[W]here the motion may have the effect of making the

28    action less complicated, or have the effect of otherwise streamlining the ultimate resolution of
  the action, the motion to strike will be well taken").

14

1  party seeks relief not available as a matter of law.[53]   Thus, requests to strike

2  certain types of relief may be granted if "such relief is not recoverable under the

3  applicable law."[54]

4  Here, although Plaintiff requests trial by jury both in the caption of the

5  Complaint and in an appended Demand for Jury Trial, the Servicing Agreement

6  expressly waived any such right [Section 10.03].  Contractual waivers of the right

7  to trial by jury are valid and enforceable.[55]  This is particularly true where, as here,

8  they are negotiated between sophisticated business entities.

9  As for punitive damages, any award requires a finding by clear and

10  convincing evidence of both that a tort was committed and that oppression, fraud

11  or malice was the impetus of that tort.[56]  Mere legal conclusions are not sufficient

12  to sustain an award of punitive damages under California Civil Code § 3294;

13  factual allegations must be made.[57]  This is not simply an issue of proof, rather the

14  pleadings themselves must be sufficient.  Thus, in *G.D. Searle & Company*,

15  plaintiff made conclusory and ambiguous allegations.  In holding that plaintiff's

16  claim for punitive damages had been inadequately pled, the court reviewed the

17  possible grounds for punitive damages.  The court pointed out that, like fraud,

18  actions for punitive damages must be specifically pled:

19  > Notwithstanding relaxed pleading criteria, certain tortious injuries
20  > demand firm allegations.  Vague, conclusory allegations of fraud or
> falsity may not be rescued by the rule of liberal construction.... When
21  > the plaintiff alleges intentional wrong, a prayer for exemplary

22

23  [53] *Rosales v. Citibank*, (N.D. Cal. 2001) 133 F.Supp.2d 1177, 1180.
24  [54] 2 Moore's Federal Practice § 12.37[3] (3d ed. 2004); *Wilkerson v. Butler*, (E.D. Cal. 2005) 229 FRD 166, 172; *Bureerong v. Uvawas*, (C.D. Cal. 1996) 922 F. Supp. 1450, 1479 n.34.
25  [55] *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, (2d Cir.2007) 500 F.3d 171, 188; *Okura & Co. (America), Inc. v. Careau Group*, (C.D. Cal. 1991) 783 F.Supp. 482, 488-89; *Morgan*
26  *Guar. Trust Co. of New York v. Crane*, (S.D.N.Y.1999) 36 F.Supp.2d 602, 603–04.
[56] Civil Code § 3294.
27  [57] *Silberg v. California Life Insurance Company*, (1974) 11 Cal.App.3d 452, 462; *Brousseau v.*
28  *Jarrett*, (1977) 73 Cal.App.3d 864, 872; *G.D. Searle & Company v. Superior Court*, (1975) 49 Cal.App.3d 22; *Cohen v. Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1, 8.

1
2
3
4
5
6

damages may be supported by a pleading that the wrong was committed willfully or with a design to injure. . . . Where non-deliberate injury is charged allegations such as defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice.... when a defendant must produce evidence in defense of an exemplary damages claim, fairness demands that he receive adequate notice of the kind of conduct charged against him.[58]

7
8
9
10
11
12
13

Instead of specific facts to show oppression, fraud or malice, Plaintiff contents itself with conclusory statements as to fraud, oppression and malice which do not suffice. Thus, Complaint ¶¶ 44, 51, 59 and 69, and ¶¶ 4, 6, 8 and 10 of the Prayer thereto, seeking punitive damages, should all be stricken as such damages are not recoverable here because Plaintiff has failed to assert any valid claim upon which they would be entitled to punitive damages against RCS, thereby making this claim impertinent, immaterial and scandalous.

14
15
16
17
18
19
20
21
22

Furthermore, Plaintiff here seeks recovery of its attorney's fees in this action [¶ 14 of the Prayer].  However, in order to obtain an award of attorney's fees, Plaintiff must allege the existence of a statute or of a contract between itself and RCS which provides for an award of attorney's fees.[59]  Here, Plaintiff does not identify any statutes which support its demand for attorney's fees as to RCS and the only contract identified here, the Servicing Agreement does not include an attorneys' fee provision.  It does contain indemnity provisions, but those are expressly limited to defense and indemnity from claims brought *against Plaintiff* by third parties, not by Plaintiff against RCS [Servicing Agreement § 6.04].

23
24
25
26
27
28

///
///
///

---

[58] *Id*. 49 Cal.App.3d at 29.
[59] See Civil Code §§ 1717 (providing for attorneys' fees in an action on a contract) and 1021.

16

1    **IV.    CONCLUSION**

2          Based on the foregoing, RCS respectfully request this Court to grant its

3    Motion to Dismiss the Complaint in its entirety, without leave to amend or, in the

4    alternative, strike the requested portions of the Complaint.

5

6                                    Respectfully submitted,

7                                    WRIGHT, FINLAY & ZAK, LLP

8    Dated:  December 2, 2011       By:    /s/ Jonathan D. Fink
9                                         Jonathan D. Fink, Esq.
10                                        Attorneys for Defendant, RESIDENTIAL
                                          CREDIT SOLUTIONS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**PROOF OF SERVICE**

I, Cindy A. Barragan, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.

On December 2, 2011, I served the foregoing document described as **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF OR, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE SERVICE LIST**

[ ]    (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business.

[X]    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(b)(2)(E).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

[ ]    (BY NORCO OVERNITE - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Norco Overnite with the delivery fees provided for.

[X]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 2, 2011, at Newport Beach, California.

Cindy A. Barragan

1
PROOF OF SERVICE

1

## SERVICE LIST

2

3  Paul B. Salvaty, Esq.
Cameron M. Kalunian, Esq.
4  Glaser Weil Fink Jacobs Howard Avchen & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
5  Los Angeles, CA 90067
6  310-553-3000;  Fax: 310-556-2920
Emails:  psalvaty@glaserweil.com; ckalunian@glaserweil.com
7  *Attorneys for Plaintiff, Westbourne Capital, LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE